**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | |
|---|---|
| **JACOB YANOSICK**, individually and on behalf of all others similarly situated, | Civ. No.:  1:25-cv-1245 |
| *Plaintiff,* | CLASS ACTION COMPLAINT |
| v. | |
| **EXACT CARE PHARMACY, LLC,** | |
| *Defendant.* | |

## INTRODUCTION

1.      This action arises out of Defendant, Exact Care Pharmacy, LLC's ("Defendant") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.      Defendant is a national medication management and pharmacy care provider.

3.      Defendant makes, or has made on its behalf, telemarketing calls soliciting its pharmacy care services.

4.      These calls are made to individuals on the National Do-Not-Call Registry.

5.      These calls continue even after the called party requests that Defendant cease calling.

6.      The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

7.      The TCPA also prohibits making telemarketing calls to a person who, like Mr. Yanosick, has previously asked not to receive such calls and makes Defendant liable for calls in violation of the TCPA's internal do-not-call rules.

1

8.     Accordingly, Mr. Yanosick brings this action on behalf of himself and two classes of similarly situated individuals.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

10.     This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District and has committed tortious acts in/from this District.

11.     Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in, was directed at, and/or emanated from this District.

## PARTIES

12.     Plaintiff Jacob Yanosick ("Mr. Yanosick" or "Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Moon Township, Pennsylvania.

13.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.     Defendant is, and at all times mentioned herein was, an Ohio limited liability company.

15.     Defendant's principal place of business is located at 8333 Rockside Road, Valley View, Ohio 44125.

16.     Defendant may be served via its registered agent URS Agents, LLC located at 4568 Mayfield Road, Suite 204, Cleveland, Ohio 44121.

17.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

2

## TCPA BACKGROUND

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

20. These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

21. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

22. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

23. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

24. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

3

25.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

26.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

27.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

28.     These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

29.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

30.     These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. §

---

[1]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-

64.1200(d).

31.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

32.     There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

33.     These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations.  A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

34.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

35.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate

---

not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

36.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## **FACTUAL ALLEGATIONS**

37.     Plaintiff is the sole and customary user of a cellular telephone number (XXX)-XXX-3391.

38.     Plaintiff's telephone number (XXX)-XXX-3391 is used for residential purposes and is not registered to a business.

39.     Plaintiff's telephone number (XXX)-XXX-3391 is primarily used for personal, family and household use.

40.     Plaintiff's telephone number (XXX)-XXX-3391 is his only personal telephone number.

41.     Plaintiff's telephone number (XXX)-XXX-3391 has been on the National Do-Not-Call Registry since December 14, 2024.

42.     In or around December 2024, Plaintiff began receiving telephone calls from Defendant soliciting its pharmacy services.

6

43.     These calls came from changing ten-digit numbers, including but not limited to: (412) 569-6820, (412) 284-1215, (412) 410-3964 and (412) 329-4866.

44.     Upon information and belief, Defendant uses numbers matching the same area code as the called number to increase the likelihood that the recipient of the call will answer the call.

45.     When Plaintiff answered the phone, the callers advised that they were calling from "Exact Care Pharmacy" and would attempt to solicit Plaintiff with pharmacy services.

46.     Plaintiff advised the callers that he was not interested and requested that they stop calling him.

47.     Despite his requests not to be called, Plaintiff continued to receive calls from Defendant.

48.     Plaintiff registered his telephone number on the National Do Not Call Registry in an attempt to get the calls to stop.

49.     Despite his do-not-call requests and registering his number on the National Do Not Call Registry, Plaintiff continued to receive calls from Defendant.  For example, Plaintiff received calls on at least the following dates and times:

- March 14, 2025 at 12:18pm from (412) 569-6820;

- March 17, 2025 at 10:06am from (412) 284-1215;

- March 18, 2025 at 9:57am from (412) 284-1215;

- March 19, 2025 at 1:04pm from (412) 284-1215;

- March 20, 2025 at 9:28am from (412) 569-6820;

- March 21, 2025 at 9:27am from (412) 569-6820;

- March 27, 2025 at 12:28pm from (412) 569-6820;

- March 27, 2025 at 6:06pm from (412) 569-6820;

7

- May 28, 2025 at 10:58am from (412) 410-3964; and

- June 4, 2025 at 5:30pm from (412) 329-4866.

50. Plaintiff did not provide prior express invitation or permission or consent for these telephone calls.

51. To the contrary, in response to the unwanted calls, Plaintiff repeatedly requested that they stop.

52. Defendant did not have written do-not-call policies or procedures at the time of the calls it made to Plaintiff and the classes defined below.

53. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued telephone calls to Plaintiff after he directly asked not to be contacted.

54. Numerous consumers also have taken to the internet[2] to complain about Defendant's calling practices:



**Initial Complaint**                    **Type:** Sales and Advertising Issues
**Date:** 03/18/2025                      **Status:** Unresolved

We keep receiving robocalls from this company, or it's vendor. We actually have one of the calls recorded. Being that we are on the Federal DNC, these calls violate the TCPA. We attempted to reach out to the company, but they failed to take any responsibility, even though when we "played along" with the last call, we were transferred to an actual Exact Care Pharmacy representative. The company is well-aware that this is going on, as they have faced multiple litigations regarding the matter. We need to speak to the company's ATTORNEY or LEGAL REPRESENTATION to resolve this matter. Our next step will be significant legal action. A recording of the last call they made, can be made available upon request.

---

[2] *See* https://www.bbb.org/us/oh/valley-view/profile/pharmacy/exactcare-pharmacy-llc-0312-92008327/complaints (last accessed June 12, 2025).

👤 **Initial Complaint**

**Date:** 12/20/2024

**Type:** 👤 Customer Service Issues
**Status:** 💬 Answered

Robo calls before 0800MST and solicitation. I have asked several time to have my number removed and stop calling me. They do not even have services I can use.

👤 **Initial Complaint**

**Date:** 06/22/2023

**Type:** 👤 Customer Service Issues
**Status:** 💬 Answered

I am having problems with a pharmacy delivery service. I have told him over and over to not call me. I block one number they start calling again from a different one I've told them for a year I do not want their service and they won't leave me alone. Name of company Exact care pharmacy. Medication and health info is HIPPA

👤 **Initial Complaint**

**Date:** 03/02/2023

**Type:** 👤 Customer Service Issues
**Status:** 💬 Answered

This pharmacy continues to create false numbers in an attempt to contact my personal cell phone. They keep insisting to speak to "Billy," however, I do not even know anyone by that name. They keep on calling my number even after notifying them that I am not the patient they are trying to reach. This is very annoying, unprofessional, and does not look good in the eyes of HIPAA, since I already know one of their patients' names. I would like to request no further contact from this business.

55.     Defendants' violations were negligent.

56.     Alternatively, Defendants' violations were willful and knowing.  For example, upon information and belief Defendant received complaints about its illegal telemarketing practices via the Better Business Bureau and other sources and knowingly allowed its telemarketing practices that violate the TCPA to continue.

57.     Plaintiff and the classes were damaged by the violations alleged herein.  Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls.  Defendant's telephone calls were annoying and a nuisance, and wasted the time of Plaintiff and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing

congressional findings of consumer "outrage" as to prerecorded calls).

**DEFENDANT'S LIABILITY**

58.     Defendant used automated systems to make outbound telephonic calls to hundreds

if not thousands of consumers across the U.S., including to consumers whose phone numbers are

listed on the National Do-Not Call Registry.

59.     Because Defendant's calls constitute telemarketing, Defendant was required to

obtain prior express written consent from the persons to whom Defendant made calls.

60.     "Prior express written consent" is specifically defined by statute as:

> [A]n agreement, in writing, bearing the signature of the person called that clearly
> authorizes the seller to deliver or cause to be delivered to the person called
> advertisements or telemarketing messages using an automatic telephone dialing
> system or an artificial or prerecorded voice, and the telephone number to which the
> signatory authorizes such advertisements or telemarketing messages to be
> delivered.

47 C.F.R. §64.1200(f)(8)

61.     Plaintiff never provided Defendant with any consent, written or otherwise.

62.     Defendant made two or more telephone solicitations to Plaintiff, whose number

was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a

violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

63.     Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500

per call through 47 U.S.C. § 227(c).

64.     Plaintiff is entitled to $1,500 per call if Defendant's actions are found to be knowing

or willful.

65.     Defendant placed two or more telemarketing calls to Plaintiff, despite not having

in place the required policies and procedures prior to making such calls.  This constitutes a

violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

66.    Defendant placed two or more telemarketing calls to Plaintiff after he requested that Defendant stop calling him.

67.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to $500 per call through 47 U.S.C. § 227(c).

68.    Plaintiff is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

69.    Defendant is directly liable for the calls it placed.

70.    To the extent Defendant used a third party to place the calls on its behalf, Defendant is liable for each of the calls under one or more of the following theories of liability: (1) Actual Authority, (2) Apparent Authority, (3) Ratification.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

## THE TCPA CLASSES

Plaintiff and all persons within the United States to whose telephone number Defendant placed, or had placed on its behalf, two or more telemarketing calls that marketed the services of Defendant in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Defendant placed, or had placed on its behalf, two or more telemarketing calls that marketed the services of Defendant in a 12-month period from four (4) years prior to the filing of the Complaint after Defendant's or any of its vendor's records indicate the called party requested the calls stop and/or to be added to Defendant's internal do-not-call list.

("Policy Class").

(The Registry Class and the Policy Class are collectively referred to herein as the "Classes.")

72.     Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

73.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

74.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendant or its vendor made the telephone calls;

- The telephone numbers to which Defendant or its vendor made telephone calls;

- The telephone numbers for which Defendant had prior express written consent;

- The purposes of such telephone calls; and

- The names and addresses of Class members.

75.     The Classes are comprised of hundreds, if not thousands, of individuals.

76.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendant makes, or had made on its behalf, telemarketing calls;

- Whether Defendant obtains prior express written consent;

- Whether Defendant makes solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

- Whether Defendant had the required policies and procedures prior to making telemarketing calls;

- Whether Defendant continued to call individuals that requested that the calls stop and/or to be added to Defendant's internal do-not-call list;

- Whether Defendant's statutory violations were willful and knowing; and

- Whether Defendant should be enjoined from engaging in such conduct in the future.

77.    Plaintiff is a member of the Classes in that Defendant placed, or had placed on its behalf, two or more calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, after he asked Defendant to stop, and while his telephone number was on the National Do-Not-Call Registry.

78.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

79.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

80.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

81.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

82.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

83.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

13

84.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

85.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

86.     Plaintiff incorporates the foregoing allegations as if set forth herein.

87.     Defendant violated 47 U.S.C. § 227(c) by making telephone solicitations to Plaintiff's and putative Registry Class Member's telephone numbers as described above.

88.     Defendant made telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

89.     Plaintiff and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

90.     Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

91.     Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

92.     Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

14

93.     Plaintiff incorporates the foregoing allegations as if set forth herein.

94.     Defendant violated 47 U.S.C. § 227(c) by making numerous telephone calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers as described above.

95.     Defendant did so despite not having a written policy pertaining to "do not call" requests.

96.     Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

97.     Defendant did so despite not recording or honoring "do not call" requests.

98.     Defendant made two or more telemarketing calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

99.     Defendant made these calls after their records reflect that Plaintiff and the putative class members requested that Defendant stop calling and/or to be added to Defendant's internal-do-not-call list.

100.     Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

101.     Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

15

B.     An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of statutory damages;

E.     An award of treble damages; and

F.     Such other and further relief that the Court deems reasonable and just.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: June 13, 2025

<div style="margin-left: 40%">

*/s/ Max Morgan*
Max S. Morgan, Esq.
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Counsel for Plaintiff and the putative class

</div>

16